UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NICHOLAS T.,[1]                    )
                                   )
            Plaintiff,             )
                                   )
      vs.                          )    Case No. 4:24-CV-370-ACL
                                   )
LELAND DUDEK,                      )
Acting Commissioner of Social Security )
Administration,[2]                 )
                                   )
            Defendant.             )

## MEMORANDUM

Plaintiff Nicholas T. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he

---

[1]On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

[2]Leland Dudek is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

was capable of performing past relevant work.   This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

## I.   Procedural History

Plaintiff filed his applications for benefits on January 20, 2021.   (Tr. 219-26.)   He claimed he became unable to work on November 16, 2019, due to hearing loss, depression, anxiety, memory loss, lack of coordination, and insomnia.   (Tr. 250.)   Plaintiff was 37 years of age on his alleged onset of disability date.   (Tr. 38.)   His applications were denied initially and on reconsideration.   (Tr. 121-28, 131-36.)   On February 9, 2023, after a hearing, an ALJ found that Plaintiff was not disabled.   (Tr. 28-39.)   The Appeals Council denied Plaintiff's claim for review.   (Tr. 1-4.)   Thus, the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff first argues that the ALJ's decision "fails to properly evaluate medical opinion evidence."   (Doc. 18 at 3.)   Plaintiff next argues that the decision "lacks a proper credibility evaluation."   *Id.* at 7.

## II.   The ALJ's Determination

The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024.   (Tr. 30.)   She found that Plaintiff has not engaged in substantial gainful activity since November 16, 2019, the alleged onset date.   (Tr. 31.)   Next, the ALJ concluded that Plaintiff had the following severe impairments: bilateral hearing loss;

history of medulloblastoma[3] status/post treatment by surgery, radiation, and chemotherapy;

major depressive disorder; generalized anxiety disorder; and an unspecified neurocognitive

disorder.  *Id.*  The ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments.  *Id.*

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform less than a full range of light work defined in 20 CFR 404.1567(b) and 416.967(b).  Claimant is able to sit for 6 hours out of 8 hours; and he can stand and walk for 6 hours out of 8 hours.  Claimant can lift, carry, push, or pull 10 pounds frequently and up to and including 20 pounds occasionally.   He should never climb ladders, ropes, or scaffolding.  Claimant can occasionally climb stairs or ramps; stoop; kneel; crouch; balance; and crawl.  Claimant must have a work environment with no more than a moderate level of noise, as that term is defined in The Dictionary of Occupational Titles, such as an office.  Claimant should never be exposed to hazards, such as dangerous machinery or unprotected heights.  Job duties must be simple, repetitive, and routine.  These duties must be consistently the same with little or no change.  Claimant should never be expected to exercise independent judgment regarding the nature of his job duties.  Claimant is able to concentrate and persist for 2 hours at a time before requiring a break.  Duties must be low stress, defined as never having duties that require piecework or commission sales.  Claimant should never travel in the course of his duties except to and from one primary job location.  He should never have duties that require interaction with the public as a primary function.  Claimant can have occasional contact with co-workers and supervisors.  Co-worker contact must be incidental and not in a team or teamwork setting.

(Tr. 33.)

The ALJ found that Plaintiff was capable of performing past relevant work as a Cleaner

---

[3]Medulloblastoma is a metastatic type of brain tumor that is most common in children.  *See* WebMD, https://www.webmd.com/cancer/brain-cancer/brain-tumor-types (last visited March 26, 2025).

Housekeeper.   (Tr. 37.)   The ALJ found in the alternative that Plaintiff could perform other jobs

that exist in significant numbers in the national economy, such as Collator Operator, Router, and

Marker.   (Tr. 37-38.)   She concluded that Plaintiff was, therefore, not under a disability from

his alleged onset date through the date of the decision.   (Tr. 39.)

The ALJ's final decision reads as follows:

> Claimant has not been under a disability, as defined in the Social
> Security Act, from November 16, 2019, through the date of this
> decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.*

## III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less

than a preponderance of the evidence, but enough that a reasonable person would find it adequate

to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence

supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir.

2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations

omitted).

To determine whether the Commissioner's decision is supported by substantial evidence

on the record as a whole, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The plaintiff's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the plaintiff's impairments.

6.      The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must

indicate whether medical findings "especially relevant to the ability to work are present or absent."  20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.  *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.  *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.  *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.  *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.  *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

As noted above, Plaintiff challenges the ALJ's evaluation of the medical opinion evidence and "credibility" of Plaintiff's subjective complaints.   The undersigned will discuss Plaintiff's claims in turn.

### A.  Opinion Evidence

Plaintiff argues that the ALJ erred in evaluating all the opinions of the state agency medical and psychological consultants; examining consultative psychologist Jennifer Ritchie, Psy.D.; and examining physician James Bockhorst, M.D.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c.   This provision states the Social Security

Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."   20 C.F.R. § 404.1520c(a).   Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.   20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision.   20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be."   *Id.*   An ALJ may, but is not required to, explain how he or she considered the remaining factors.   *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting § 404.1520c(a), (b), alterations omitted).   An ALJ must articulate how persuasive he

found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

### 1. Dr. Ritchie

Plaintiff presented to Dr. Ritchie for a consultative psychological examination on June 4, 2021, upon the referral of the state agency.   Plaintiff reported symptoms of a "down" mood and feeling "not super happy," low energy and motivation, and low self-esteem; excessive worry, and being easily agitated; and problems with attention and memory.   (Tr. 401.)   Plaintiff currently lived with his parents and his son; he had been married and divorced twice.   *Id.*   Plaintiff had suffered from a brain tumor and had surgery to remove the tumor when he was 14 years old. (Tr. 402.)   The tumor metastasized to his spine and he required radiation and chemotherapy. *Id.*   He indicated that he also suffered a minor stroke during the surgery, and reported a significant loss of functioning following the surgery and continued problems with balance, coordination, and memory related to the brain tumor.   *Id.*   Plaintiff reported that he was homeschooled after his cancer diagnosis and tried to return to school unsuccessfully following the surgery.   (Tr. 401.)   He graduated from high school in 2000 and completed his associates degree from ITT Technical Institute in 2002.   *Id.*   Plaintiff reported difficulty maintaining employment over the past ten years due to difficulty with attention and focus.   *Id.*   He described himself as "pretty friendly," and indicated he spends most of his time with his parents and son. (Tr. 402.)   Plaintiff reported difficulty remembering tasks for personal hygiene and staying focused to complete household chores.   *Id.*

On mental status examination, Dr. Ritchie noted Plaintiff's appearance was appropriate, with "good" hygiene and dress; he was alert and oriented in all realms; and his attitude was open. *Id.*   Plaintiff described his mood as "nervous," with a congruent affect.   *Id.*   Dr. Ritchie found

Plaintiff's speech was logical and coherent; his thought process was organized; his behavior and motor activity was normal and alert; he maintained good eye contact; he denied any current suicidal ideations; his insight and judgment were fair; he was able to recall three unrelated words immediately and unable to recall all three of them after a brief delay, indicating impaired delayed memory; was unable to accurately perform serial sevens starting at 100; was able to spell "world" correctly forwards but not backwards; correctly recalled a series of three numbers forwards then backwards; demonstrated good moral judgment and appropriate logical reasoning; his quality of thinking was intact; he had no difficulty with simple math; his fund of knowledge and estimated level of intellectual functioning was in the average range; he displayed adequate effort and persistence during the evaluation; his fine and gross motor skills appeared to be intact; and his gait was steady.   (Tr. 402-03.)   Dr. Ritchie stated that the results from the mental status exam suggest impairment in attention and memory consistent with Plaintiff's reported symptoms.   *Id.*   She found that Plaintiff met the criteria for Unspecified Neurocognitive Disorder and Major Depressive Disorder, Recurrent, Moderate.   (Tr. 403.)   Dr. Ritchie expressed the opinion that Plaintiff had "marked" impairment in his "current overall functional capacity."   (Tr. 404.)   She stated that Plaintiff has "fair" social skills and demonstrates "moderate impairment" interacting with others routinely and adapting to his environment.   *Id.* Dr. Ritchie found that Plaintiff demonstrated "severe impairment" in sustained concentration and persistence in simple and repetitive tasks.   *Id.*   She stated that Plaintiff exhibited "severe difficulty" retaining information and effectively carrying out instructions that are multi-step and complex.   *Id.*   Dr. Ritchie found that Plaintiff appeared to have "moderate deficits" with reasoning and making work-related decisions.   *Id.*   Finally, she stated that Plaintiff appeared capable of managing himself and has the basic math skills to manage his own funds.   *Id.*

The ALJ found Dr. Ritchie's opinion "unpersuasive."  (Tr. 36.)   She stated that Dr. Ritchie found marked impairment in Plaintiff's overall functional capacity, but did not offer any support for this conclusion.  *Id.*   The ALJ noted that the record reflects that Plaintiff has "fairly good overall functioning," as he cooks, cleans, volunteers, and cares for his four-year-old son.  *Id.*   The ALJ next stated that, although Dr. Ritchie opined that Plaintiff has a severe impairment in retaining information, carrying out instructions, and concentration and persistence for simple and repetitive tasks, her own exam reflects that he makes simple meals, is alert and oriented, has normal immediate recall, can spell the word "world" forwards, and can recall a series of three numbers both forwards and backwards.  *Id.*   She stated that the record as a whole reflects that Plaintiff is less limited than Dr. Ritchie opined.  *Id.*   For example, the ALJ noted that the objective medical findings of record are largely normal, Plaintiff improved with medication, and he has a wide range of activities.  *Id.*   The ALJ concluded that, overall, Plaintiff has no more than moderate mental limits.  *Id.*

Plaintiff argues that the ALJ "summarizes portions of the record that the ALJ suggests do not support the doctor's opinion, however, the ALJ fails to discuss or even recite other findings in Dr. Ritchie's opinion…"  (Doc. 18 at 6.)

The undersigned finds that the ALJ properly evaluated Dr. Ritchie's opinion under the governing regulations.   As to supportability, the ALJ indicated that Dr. Ritchie offered no support for her conclusion that Plaintiff had marked impairment in his overall functional capacity.   The ALJ also found that Dr. Ritchie's own examination findings did not support her opinion that Plaintiff had a severe impairment in retaining information, carrying out instructions, and concentrating and persisting for simple and repetitive tasks.   For example, Dr. Ritchie found that Plaintiff was alert and oriented, his speech was logical and coherent, his thought process was

organized, his quality of thinking was intact, he had no difficulty with math, his fund of knowledge was normal, his intelligence was average, he had normal recall, and he could recall a series of three numbers forwards and backwards.   With regard to consistency, the ALJ observed that the mental status examination findings throughout the record were "largely normal."   The record supports that, aside from a depressed mood noted at times, the examinations were normal. (Tr. 36, 375, 379, 383, 429, 432, 436, 498, 502, 505, 509-10, 514-15, 525, 722-23, 727-28, 733, 740, 744.)   Additionally, the ALJ noted that Plaintiff's wide range of activities, including cooking, cleaning, volunteering, and caring for his son, were inconsistent with marked impairment in his overall ability to function.

Thus, the ALJ did not err in evaluating Dr. Ritchie's opinion.

## 2. Dr. Bockhorst

Dr. Bockhorst completed a Physical Residual Functional Capacity Questionnaire on January 6, 2023.   (Tr. 811-14.)   He indicated that Plaintiff has a diagnosis of brain tumor status post-surgery, chemo, and radiation; and that he has been seeing Plaintiff one to two times a year since June 2020.   (Tr. 811.)   Dr. Bockhorst listed Plaintiff's symptoms as impaired balance, poor concentration, poor manual dexterity, depression, anxiety, and hearing loss.   *Id.*   He stated that the long-term effects of radiation on the brain have caused these symptoms.   *Id.*   Dr. Bockhorst identified the following clinical findings and objective signs supporting his opinion: abnormal right ear exam.   *Id.*   Dr. Bockhorst expressed the opinion that Plaintiff could walk six city blocks without rest or severe pain, stand for thirty minutes at a time, and stand or walk for two hours total in an eight-hour workday; sit for more than two hours at a time, and sit for about six hours total in an eight-hour workday; can occasionally lift less than ten pounds and rarely lift ten to twenty pounds; needs the ability to shift positions at will from sitting, standing, or

walking; needs ten-minute unscheduled breaks about every 30 minutes during the workday; has limitations with reaching, handling, and fingering; would experience pain or symptoms severe enough to interfere with attention and concentration needed for simple work tasks frequently; and would be absent from work due to his impairments more than four days per month.   (Tr. 812-14.)

The ALJ found that Dr. Bockhorst's opinion "overstates the record and imposes extreme limitations unsupported by objective evidence and inconsistent with the record."   (Tr. 36.)   She noted that Dr. Bockhorst only sees Plaintiff for one to two visits a year, which is insufficient "for evaluating the longitudinal condition" of Plaintiff.   *Id.*   Moreover, the ALJ stated that Dr. Bockhorst listed a host of subjective symptoms, but notes only "abnormal right ear exam" when citing objective evidence that might support his opinion.   *Id.*   She points out that Dr. Bockhorst opines that Plaintiff has frequent interference with attention and concentration for simple tasks, but cites no supporting objective evidence and is not a mental health professional.   *Id.*   With regard to physical limits, the ALJ notes that Dr. Bockhorst opines that Plaintiff is limited to a reduced range of sedentary work yet cites no supportive medical findings other than right ear deficits.   (Tr. 37.)   She states that the record as a whole demonstrates Plaintiff is less physically limited, given his abilities for cooking, self-care, travel, and childcare.   *Id.*

Plaintiff argues that the ALJ erred in discounting Dr. Bockhorst's opinion for lack of supporting objective evidence.   He claims that the chemo and radiation cited by Dr. Bockhorst occurred when Plaintiff was fourteen and there are therefore no records in the file of this treatment.   Plaintiff further argues that the ALJ erred in discounting Dr. Bockhorst's opinion for only treating Plaintiff one to two times a year while also finding the opinions of non-examining doctors persuasive.

The undersigned finds that the ALJ properly considered the supportability and consistency of Dr. Bockhorst's opinion.   As to supportability, the ALJ accurately noted that the only "clinical findings and objective signs" Dr. Bockhorst cited in support of his restrictive physical and mental limitations was an "abnormal right ear exam."   The ALJ reasonably found this explanation lacking.   Moreover, Plaintiff points to nothing in Dr. Bockhorst's treatment notes to support his opinions.   A review of Dr. Bockhorst's records reveals normal examinations other than the following: a depressed affect in January 2022 (Tr. 424-25); a wart on Plaintiff's left hand in March 2022 (Tr. 574-75); and a rash in August 2022 (Tr. 667).   Moreover, the ALJ properly considered the fact that Dr. Bockhorst only treated Plaintiff one to two times a year. Thus, the ALJ properly addressed the supportability of Dr. Bockhorst's opinion.

As to the consistency factor, the ALJ found that Dr. Bockhorst's opinion was inconsistent with the other medical evidence in the record.   As previously discussed, aside from a depressed mood noted at times, the mental status examinations were largely normal.   (Tr. 36, 375, 379, 383, 429, 432, 436, 498, 502, 505, 509-10, 514-15, 525, 722-23, 727-28, 733, 740, 744.)   The ALJ also noted Plaintiff's ability to cook, tend to his self-care, travel, volunteer, and take care of his four-year-old child, and found these activities were inconsistent with a limitation to a restricted range of sedentary work.

Thus, the ALJ's evaluation of Dr. Bockhorst's opinion is supported by substantial evidence.

### 3.  State Agency Opinions

Plaintiff takes issue with the ALJ's evaluation of all of the prior administrative medical findings ("PAMF") in the record.

### i.    Psychological Consultants

The ALJ first considered the PAMFs of the state agency psychological consultants Linda Skolnick, Psy.D., and Marsha Toll, Psy.D.

On July 14, 2021, Dr. Skolnick completed a Mental Residual Functional Capacity assessment, in which she expressed the opinion that Plaintiff had some moderate mental limitations but retained the abilities to understand and remember instructions for simple, routine tasks; maintain concentration, persistence, and pace on simple, routine tasks; adapt to a work environment with reduced public contact and occasional interaction with co-workers and authority figures; and adapt to a work environment with infrequent change.  (Tr. 81-82.)  On March 31, 2022, on reconsideration, Dr. Toll completed a Mental Residual Functional Capacity assessment, in which she found the same limitations as Dr. Skolnick, except she described Plaintiff's social interaction capacity as follows: "The claimant can interact adequately with peers and supervisors.   The claimant is capable of brief and superficial interactions with the public."  (Tr. 116.)

The ALJ found these opinions "persuasive, as they are supported by the evidence and they are consistent with the record."  (Tr. 36.)   She stated that the record demonstrates that Plaintiff has moderate mental limits, and that he can perform simple, repetitive, and routine tasks with additional limitations for the reasons previously discussed.  *Id.*   The ALJ, however, found that the record fails to demonstrate that Plaintiff can have only "brief and superficial contact with the public, as he attends social outings and does volunteer work through the church."  *Id.*

Plaintiff argues that the ALJ's evaluation of the opinions of Drs. Skolnick and Toll does not adequately explain how supportability and consistency were considered.   He states that the

ALJ failed to consider supportability because the decision lacks any discussion of the doctor's individual opinions.

A review of the opinions of Drs. Skolnick and Toll reveals that they provided an exhaustive summary of the medical records of Plaintiff's mental health providers' treatment notes, the findings of Dr. Ritchie, and Plaintiff's testimony regarding his limitations.   (Tr. 87-89, 98-99.)   For example, Dr. Toll cited the following medical evidence, in relevant part:

- At a June 2020 visit to establish care, Plaintiff reported increased anxiety due to his wife leaving him one week prior, but his mental status exam was normal and he reported that he did not feel like his symptoms were severe enough for medication.   He was diagnosed with situational mixed anxiety and depressive disorder.   (Tr. 442-44.)

- In December 2021, Plaintiff complained of depression and irritability, but his mood and judgment were normal; he was started on antidepressant medication.   (Tr. 432.)

- On January 6, 2022, Plaintiff reported ongoing depression but not much anxiety; he was noted to have a depressed affect on examination.   (Tr. 423-25.)

- On January 26, 2022, Plaintiff reported that the medication had helped his mood and his mental status exam was unremarkable.   (Tr. 510.)

- In February 2022, Plaintiff reported that he was doing alright and his concentration was okay; his exam was normal, and his recent and remote memory was grossly intact.   (Tr. 513.)

(Tr. 98-99.)

It is true that the ALJ did not repeat this summary of the medical evidence in her opinion. Although the ALJ could have been more explicit in citing the evidence upon which the state agency psychologists relied, "an arguable deficiency in opinion-writing technique does not

require us to set aside an administrative finding when that deficiency had no bearing on the outcome." *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (internal quotation marks omitted). *See Horwath v. Kijakazi*, No. 6:22-CV-03031-DGK, 2023 WL 3865507, at *3 (W.D. Mo. June 7, 2023) ("Although the ALJ certainly could have written more, albeit on an already 19-page decision" regarding her decision to find the state agency consultants' opinions persuasive, the failure to do so was harmless when the plaintiff "has not provided any indication that the ALJ would have decided differently had she more thoroughly articulated the factors.").

Further, the ALJ accurately noted that Dr. Toll's opinion that Plaintiff could only have brief and superficial contact with the public was inconsistent with his activities of attending social outings and doing volunteer work through his church.  (Tr. 36, 753, 764, 768.)

The ALJ found these opinions "persuasive," as they were "supported by the evidence" and "consistent with the record."  (Tr. 36.)  Thus, she properly complied with the relevant regulations.

### ii.    Medical Consultants

The ALJ next considered the PAMFs of the state agency medical consultants, Clifford Costley, M.D., and James Weiss, M.D.   In August 2021, Dr. Costley completed a Physical Residual Functional Capacity assessment, in which he expressed the opinion that Plaintiff could perform the exertional requirements of light work, with the following additional limitations: never climb ladders, ropes, or scaffolds; occasionally balance; should avoid all exposure to hazards such as machinery and heights; and should avoid concentrated exposure to noise.  (Tr. 79-80.)   In April 2022, Dr. Weiss found the same limitations as Dr. Costley, but further noted that due to Plaintiff's bilateral hearing loss and use of hearing aids, Plaintiff "would do best in work environments that require only occasional hearing."  (T. 101.)

The ALJ found these opinions "generally persuasive, because they are supported by the evidence and they are mostly consistent with the record."  (Tr. 36.)  She stated that the record demonstrates that Plaintiff can perform light work, with some postural and environmental limitations.  *Id.*  The ALJ, however, found that the record failed to demonstrate that Plaintiff was limited to only occasional hearing.  *Id.*  She explained that Plaintiff's hearing "improved with hearing aids and he did fine at his hearing, with people speaking in normal tones and volume."  *Id.*

Plaintiff again argues that the ALJ failed to properly articulate how she considered the supportability and consistency of the state agency physicians' opinions.  He further argues that the ALJ's statements regarding Plaintiff's hearing were not supported by the record and beyond the expertise of the ALJ.

The state agency physicians provided a detailed summary of Plaintiff's treatment notes, examination findings, and statements regarding his daily activities.  (Tr. 80-81, 101-02.)  For example, Dr. Weiss stated that Plaintiff reports that he falls frequently but he is consistently noted to have a normal gait on examination.  (Tr. 102, 444, 432, 424, 687.)  Dr. Weiss indicated that Plaintiff has bilateral hearing loss, but there is no indication in the record that his providers have issues communicating with him.  (Tr. 102.)  Dr. Weiss explained that Plaintiff should be precluded from climbing and limited in balancing due to reported balance problems he experienced resulting from the brain tumor; and should avoid exposure to noise and hazards due to his balance problems and his hearing loss.  (Tr. 101.)

Like the opinions of the state agency psychologists, the ALJ did not explicitly set out the explanations provided by Drs. Costley and Weiss.  She nonetheless explained that their opinions were supported by the evidence and consistent with the record.  (Tr. 36.)  Any error in the

ALJ's failure to provide a more detailed explanation was harmless, as the state agency physicians provided adequate support for their opinions.

Plaintiff takes issue with the ALJ's statement that Plaintiff did not demonstrate difficulty hearing during the administrative hearing.   The ALJ could not reject Plaintiff's claim solely on the basis of personal observations during the hearing, but she could properly consider such observations as part of the overall analysis.   *See Johnson v. Apfel,* 240 F.3d 1145, 1147-48 (8th Cir. 2001).   The ALJ also pointed to medical evidence showing Plaintiff's hearing improved with treatment.   (Tr. 595, 640.)   Moreover, the ALJ considered Plaintiff's hearing loss in limiting him to "a work environment with no more than a moderate level of noise, as that term is defined in The Dictionary of Occupational Titles, such as an office."   (Tr. 33.)

In sum, Plaintiff has failed to point to any reversible error in the ALJ's evaluation of the medical opinion evidence.   Thus, this claim will be denied.

### B.  Credibility Analysis

When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.   20 C.F.R. § 404.1529(c); SSR 16-3p.   "The credibility[4] of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."   *Pearsall,* 274 F.3d at 1218.   The Court must defer to the ALJ's credibility determinations "so long as such

---

[4] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.   However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."   *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).   When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.   20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Plaintiff argues that the ALJ erred in focusing on the lack of objective evidence supporting Plaintiff's allegations without evaluation of other factors.

Defendant responds that the ALJ outlined sufficient reasons for finding Plaintiff's subjective complaints inconsistent with the record, including the objective findings, his improvement with treatment, his lack of treatment for physical concerns, and his daily activities. The undersigned agrees.

The ALJ summarized Plaintiff's testimony regarding his limitations as follows, in relevant part:

> Claimant alleges he is unable to work due to hearing problems, coming in late to work because he cannot hear his alarm sometimes, insomnia and lack of sleep, reduced concentration and focus, forgetfulness, and other largely mental symptoms.

(Tr. 33.)

The ALJ found that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms; however, his statements concerning the intensity, persistence, and

limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record.   (Tr. 34.)

In making this determination, the ALJ first discussed the objective medical evidence. The ALJ noted that, despite Plaintiff's complaints of balance problems, medical examinations are largely unremarkable and, with normal neurological findings and gait.   (Tr. 34.)   With regard to Plaintiff's hearing loss, the ALJ noted that the medical record revealed Plaintiff was benefiting from hearing aids and testing showed stable thresholds.   (Tr. 34, 640.)   The ALJ acknowledged that Plaintiff reported memory loss and Dr. Ritchie noted impaired delayed memory; but pointed out that most psychiatric findings noted normal memory and overall cognition and Dr. Ritchie found Plaintiff's cognition and thought process was normal.   (Tr. 34-35.)

Although the absence of objective medical evidence is not dispositive of whether a claimant suffers from subjective complaints, the ALJ can consider the absence of objective medical evidence supporting the claimed impairments.   *Ramirez v. Barnhart,* 292 F.3d 576, 581 (8th Cir. 2002) (internal citation omitted) (Although "an ALJ may not disregard [a claimant's] subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a [c]laimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary.").   Here, the ALJ properly considered that Plaintiff's subjective complaints of disabling limitations were not supported by the objective medical evidence.

The ALJ also discussed Plaintiff's improvement with treatment.   As previously noted, Plaintiff's hearing improved after he was fitted with hearing aids.   Additionally, Plaintiff reported improvement in his depression after taking antidepressant medication.   Improvement

with treatment is a factor an ALJ may consider. *See King v. Berryhill*, No. 4:17-CV-2512-ERW, 2019 WL 1129971, at \*6 (E.D. Mo. Mar. 12, 2019) (ALJ may evaluate plaintiff's improvement with treatment in analyzing the credibility of subjective complaints of pain).

The ALJ next considered Plaintiff's daily activities. She stated that, despite his physical and mental issues, he "has a wide range of daily activity." (Tr. 35.) The ALJ indicated that, although Plaintiff lived with his parents at the time of the hearing due to a recent divorce, he had lived independently in the past, living with a prior spouse for about eight years; he lives with his young son, who he bathes and puts to bed at night; he does handyman tasks at his parents' home to contribute to the household; he cleans, prepares food, and mows; and he reported being busy attending church functions, cleaning out his uncle's house to get it ready to put on the market, and attending a singles' night at his church in April 2022. (Tr. 749, 754, 757, 764, 768.)

"Evidence of daily activities that are inconsistent with allegations of disabling pain may be considered in judging the credibility of such complaints." *Reece v. Colvin*, 834 F.3d 904, 910 (8th Cir. 2016); *see also Wright v. Colvin,* 789 F.3d 847, 854 (8th Cir. 2015) (noting the Eighth Circuit has found activities such as driving, shopping, bathing, and cooking were inconsistent with disabling pain); *Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of claimant's subjective statement of symptoms where the claimant took care of her child, drove, fixed simple meals, performed housework, shopped, and handled money). Here, the ALJ reasonably found that Plaintiff's ability to engage in the activities described above were inconsistent with his allegations of disability.

Thus, although Plaintiff accuses the ALJ of only discussing the objective medical evidence in discrediting his subjective pain complaints, the record shows that the ALJ also considered Plaintiff's significant activities and improvement with treatment. The Court "'will

not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain.'" *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (quoting *Gowell v. Apfel,* 242 F.3d 793, 796 (8th Cir. 2001)); *see also Pearsall,* 274 F.3d at 1218 ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").    In this case, the ALJ properly considered Plaintiff's subjective complaints but found they were not entirely consistent with the record.    This determination is supported by substantial evidence.

The ALJ then found Plaintiff had the RFC to perform light work with the following additional restrictions:

> He should never climb ladders, ropes, or scaffolding.    Claimant can occasionally climb stairs or ramps; stoop; kneel; crouch; balance; and crawl.    Claimant must have a work environment with no more than a moderate level of noise, as that term is defined in The Dictionary of Occupational Titles, such as an office. Claimant should never be exposed to hazards, such as dangerous machinery or unprotected heights.    Job duties must be simple, repetitive, and routine.    These duties must be consistently the same with little or no change.    Claimant should never be expected to exercise independent judgment regarding the nature of his job duties.    Claimant is able to concentrate and persist for 2 hours at a time before requiring a break.    Duties must be low stress, defined as never having duties that require piecework or commission sales. Claimant should never travel in the course of his duties except to and from one primary job location.    He should never have duties that require interaction with the public as a primary function. Claimant can have occasional contact with co-workers and supervisors.    Co-worker contact must be incidental and not in a team or teamwork setting.

(Tr. 33.)

To account for Plaintiff's credible limitations with respect to his severe impairments, the ALJ limited Plaintiff to a an extremely reduced range of light work.    These limitations are consistent with Plaintiff's documented problems with memory, concentration, balance, hearing

loss, depression, and anxiety; mostly normal examinations; and ability to engage in a wide variety of activities notwithstanding symptoms from his impairments.   The ALJ considered the opinion of the state agency medical and psychological consultants that Plaintiff could perform a range of light work, along with the findings of the consultative examiners, and formulated an RFC not identical to any of the opinions.   That is precisely the role of the ALJ.

The Court finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2025.